LAND, J.
In September, 1905, plaintiff instituted this suit to recover of the defendant company in liquidation the sum- of-$3,244.61 for money advanced, and the further sum of $566.S3 for salary and work for and in store. The petition represented that plaintiff sold goods, kept all the books, and did any and all things necessary as clerk and bookkeeper, and was entitled to a privilege as clerk on all the goods, wares, and merchandise of the company. Plaintiff further alleged that the defendant commissioners had failed and refused to allow his said •claims to be paid in due course of administration, notwithstanding that they knew them to be honest and just. The plaintiff prayed for judgment for the amounts claimed, with legal interest' from judicial demand, and for recognition and -enforcement of his privilege as clerk. The petition’was verified by the affidavit of the plaintiff.
The defendant commissioners answered, pleading the general issue, except as to their refusal to allow the claims sued on. Further answering, the respondents averred that the plaintiff was a stockholder, director, and general manager of the company, and as manager had the complete control of the mercantile business of-the corporation, at a salary of $40 per month, all of which had been paid; that on a proper settlement of the accounts, running for several years, it would appear that plaintiff had been paid in full all amounts due him; and that plaintiff owed the company the sum of $1,624.45, balance due on stock subscription, which the respondents claimed in reeonvention, and for which they prayed judgment.
The New Orleans Acid & Fertilizer Company filed a petition of intervention, alleging that it was a creditor of J.. E. Hewitt & Co., Limited, in the sum of $2,034.45, and, adopting the answer of the commissioners, intervener further alleged that the- unpaid balance due by plaintiff for stock should be ordered paid into the hands of the commissioners, whether it be found that said corporation be indebted to plaintiff or not; that plaintiff was practically the sole manager-of-J. E. Hewitt & Co., Limited, and had mismanaged the affairs of the same to the prejudice of creditors and stockholders, and that therefore, if any sum should be found due him, he should not be permitted to prorate with the other creditors of the company. The plaintiff’s answer to the petition of intervention was practically a general denial. On motion of the intervener the court 'appointed an expert accountant to examine the books of J. E. Hewitt & Co., Limited, and to make a report thereon. The case was tried, and judgment was rendered in favor of the plaintiff for $566.33 for clerk hire, with privilege- as claimed, and for the further sum of *239 $1,955.85 as an -ordinary claim, to be paid in due course of administration. The defendants and intervener have appealed.
In January, 1902, J. E. Hewitt & Co., Limited, was incorporated and organized, with its domicile at Mansfield, La. J. E. Hewitt subscribed to 30 shares of the capital stock, amounting to $3,000. W. W. Williams and J. A. Raseoe subscribed to 10 shares each, which they paid in full. Hewitt, according to the books kept by him, paid in only $1,375.55. Williams was president, J. Rascoe was vice president, and Hewitt was secretary and treasurer. On July 23, 1902, the salary of Hewitt as manager was fixed at $40 per month, and that of Raseoe at $30 per month, to begin August 1, 1903. The resolutions of that date state that the proposition of J. E. Hewitt to turn his cotton seed business over to the firm was accepted, to begin with the next season, and he was authorized to contract with the Cotton Oil Company in the name and for the benefit of the firm. But Hewitt organized the Mansfield Gin Company, which commenced doing business with J. E. Hewitt & Co. on January 14, 1903, and this business continued until June 5, 1905, about which date the company failed. The ledger shows that at that time the com-X>any owed the-gin company a balance of $2,809.11, that Hewitt owed on subscription account $1,024.45, and that there was due him on his individual account $567.35.
In his petition plaintiff alleged that the company owed him $3,244.61, “being money loaned and advanced to the said J. E. Hewitt & Co., Limited, and which they used in the purchase and paying for goods, wares, and merchandise, etc., for their store and business,” and $566.83 for salary as clerk. No statement of any kind was annexed to the petition. Plaintiff admits that after the re-conventional demand was filed, and after the expert accountant had made his report, he prepared the statement filed by him in evidence, based, not on the books, but on vouchers in his possession. This statement discredits the books kept by the plaintiff and runs counter to the allegations of his petition as to the demand for money loaned and advanced. For example, the credit balance of the Mansfield Gin Company is reduced from $2,869.11 to $1,995.39, the balance of $1,624.45 due on subscription account is wiped out, and J. E. Hewitt & Co., Limited, is charged and credited with many items not appearing on the ledger. This, statement was evidently made for the purpose of showing, outside of the book entries, that the full amount due on stock subscription had been paid. It is claimed that this result is shown by 14 individual checks or drafts of J. E. Hewitt to the order of J. E. Hewitt & Co., Limited, produced and filed in evidence. All of these drafts were drawn 'on the Hamilton Cotton Oil Company, of Shreveport, La., between January 14 and April 25, 1903, inclusive, presumably on shipments of cotton seed. Plaintiff indorsed these drafts in the name of J. E. Hewitt & Co., Limited, and, as they were all duly honored, he must have received the proceeds in his capacity of manager, secretary, and treasurer. The plaintiff, although keeping the books, did not credit himself with the money thus received on subscription account The total amount was either not entered on the books or was credited to some other account.
The report of the expert was sworn to and filed, but was not homologated, and the accountant was not called to the stand as a witness to testify to the correctness of the statement. Plaintiff objected to the admission of the report on the ground that he was entitled to cross-examine the expert. This objection was overruled, and the report was filed in evidence. For some reason not explained, after the objection and ruling, the expert was not called to the stand by the defendants or the intervener. Later in the progress of the trial, the judge announced that he would not take the report into considera *241 tion in determining the cause, because it was shown that it contained an error of $2,000. Having thus disposed of the report, the court ordered all the hooks to he filed in the record and to he sent up in the original form. Plaintiff was the only witness who testified in the case, and his testimony, with the vouchers, documents, and hooks produced, constitute the evidence on which the cause was tried and submitted. The witness was, however, examined and cross-examined as to the correctness of the report of the expert. The alleged error of $2,000 resulted from the fact that plaintiff, on April 12, 1902, charged himself with “1 certificate stock, $1,000.00'’; and, it thus appearing as a debit on subscription account, the expert reported the entry as he found it Of course, the plaintiff should not have charged himself with the certificate, to which he was entitled by virtue of the payments made by him. The expert reported that the ledger showed sundry tons of cotton seed and sundry cords of wood purchased from different persons, which were not accounted for on the books, and which .in his opinion should he charged to the gin company account. Plaintiff’s own statement shows that J. E. Hewitt & Oo. was entitled to a credit of $845.76 for seed purchased from J. W. Porter and not entered on the gin account, and plaintiff virtually admits that the other items of seed are not accounted for on the books, except, perhaps, in an omnibus debit to tbe gin company of $8,126.14, “amount seed account,” of date May 3, 1904. It is not pretended that the items for wood are accounted for on the books. Tbe expert reported errors in transfer and extensions to the extent of $3,600.33. The gin company’s hooks, which might have thrown great light on the subject, were destroyed by fire.
As manager, secretary, and treasurer, plaintiff owes a full and complete accounting to the corporation, and until such is had he should not he permitted to recover on. items necessarily involved in such accounting; nor do we, think that it would be just at this stage of the proceedings to assume-that plaintiff owes any particular amount on subscription account. This court .cannot beexpeeted to audit the accounts between the-parties from the original books brought upon this appeal, or to accept as true the report of the expert, not homologated or established by evidence contradictorily with the plaintiff. If the accounts cannot be intelligently and satisfactorily adjusted, it will be due to-the very loose manner in which the books were kept by tbe plaintiff.
It is therefore ordered that the judgment, appealed from he annulled, avoided, and reversed; and-it is now ordered that plaintiff’s demands be dismissed as in case off nonsuit, at his cost in both courts.